This is not the official court record. Official records of court proceedings may only be obtained directly from the court maintaining a particular record.

## Thomas Roberts v. TRIMEDX Holdings LLC, Dawn Griffin

| | |
|---|---|
| Case Number | 49D06-2010-CT-038629 |
| Court | Marion Superior Court, Civil Division 6 |
| Type | CT - Civil Tort |
| Filed | 10/30/2020 |
| Status | 10/30/2020 , Pending (active) |

### Parties to the Case

**Defendant** TRIMEDX Holdings LLC

Address
5451 Lakeview Pkwy S. Drive
Indianapolis, IN 46268

**Defendant** Griffin, Dawn

Address
5451 Lakeview Pkwy S. Drive
Indianapolis, IN 46268

**Plaintiff** Roberts, Thomas

Address
9403 W Stargazer Dr
Pendleton, IN 46064

Attorney
Thomas B. Roberts
*#3544248, Retained*

333 N. Alabama Suite 350
Indianapolis, IN 46204
317-771-9121(W)

### Chronological Case Summary

**10/30/2020** Case Opened as a New Filing

**10/30/2020** Complaint/Equivalent Pleading Filed
Complaint
| | |
|---|---|
| Filed By: | Roberts, Thomas |
| File Stamp: | 10/30/2020 |

**10/30/2020** Subpoena/Summons Filed
Summons
| | |
|---|---|
| Filed By: | Roberts, Thomas |
| File Stamp: | 10/30/2020 |

### Financial Information

\* Financial Balances reflected are current representations of transactions processed by the Clerk's Office. Please note that any balance due does not reflect interest that has accrued – if applicable – since the last payment. For questions/concerns regarding balances

shown, please contact the Clerk's Office.

### Roberts, Thomas
Plaintiff

**Balance Due** (as of 11/25/2020)

0.00

### Charge Summary

| Description | Amount | Credit | Payment |
|---|---|---|---|
| Court Costs and Filing Fees | 157.00 | 0.00 | 157.00 |

### Transaction Summary

| Date | Description | Amount |
|---|---|---|
| 10/30/2020 | Transaction Assessment | 157.00 |
| 10/30/2020 | Electronic Payment | (157.00) |

This is not the official court record. Official records of court proceedings may only be obtained directly from the court maintaining a particular record.

| | | |
|---|---|---|
| STATE OF INDIANA | ) | MARION COUNTY SUPERIOR COURT |
| | ) SS: | |
| COUNTY OF MARION | ) | CAUSE NO. |

| | |
|---|---|
| THOMAS ROBERTS, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| TRIMEDX HOLDINGS LLC, and DAWN GRIFFIN | ) ) |
| | ) |
| Defendants. | ) |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, pro se, for his complaint against Defendant, TRIMEDX Holdings, LLC (hereinafter "TRIMEDX") respectfully submits to the Court and alleges as follows:

**I. NATURE OF THE ACTION**

Plaintiff, Thomas Roberts (hereinafter "Roberts"), brings this Complaint against Defendant, TRIMEDX, for unlawful discrimination because of his gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. Roberts also brings this Complaint against TRIMEDX and Dawn Griffin (hereinafter "Griffin") for violation of the Equal Pay Act of 1963, 29 U.S.C. §206(d).

**II. JURISDICTION AND VENUE**

1. The Court has concurrent subject matter jurisdiction to decide this claim.

2. The Court has personal jurisdiction over the parties.

3. Roberts has satisfied his obligation to exhaust his administrative remedies as required under 42 U.S.C. § 2000e et seq., by timely filing a charge of discrimination, EEOC Charge Number 470-2020-01467 (dated 01/31/2020).

4. The EEOC issued Roberts its Notice of Right to Sue, dated August 5, 2020. Roberts files his suit within ninety (90) days of receipt of the notice.

5. All action which form the basis of this claim originated in Marion County, Indiana.

6. Roberts resides in Madison County, Indiana.

7. Defendant TRIMEDX is headquartered in Marion County, Indiana.

## III. FACTS COMMON TO ALL CAUSES OF ACTION

8. Roberts incorporates by reference paragraphs 1 through 7 above.

9. Roberts was hired by TRIMEDX (formerly Medxcel Global) on or around December 2, 2013.

10. Roberts was hired as a Talent Acquisition Consultant II.

11. The responsibilities of a Talent Acquisition Consultant II included: collaborating with hiring managers to facilitate the staffing process and execute talent acquisition strategies; leading efforts in sourcing, selecting and hiring both professional and management level talent; providing consultation and recommendations based on solid people judgment and measurement of candidates against job requirements; managing recruiting specific programs and projects.

12. As a Talent Acquisition Consultant II, Roberts consulted with departmental leaders to understand their organizational structure, hiring needs, and succession planning.

13. Roberts was also responsible for administering the Defendant's applicant tracking system and would identify potential risks to the organization as a result of new legislation such as "ban the box" and wage discrimination legislation.

14. Prior to December 2017, TRIMEDX did not have formal HR Business Partners; thus, the Talent Acquisition Consultants performed some of the functions later taken over by the HR Business Partners.

15. From 2014 to 2019, only one male associate in HR received higher than a 3.5% merit increase while a large number of female associates received greater than that percentage.

16. During that timeframe, female HR associates received a greater percentage increase in compensation corresponding to their respective promotions than males in HR.

17. In or around July 2018, Roberts applied for a Human Resource Business Partner (HRBP) position with TRIMEDX.

18. The requirements for the HRBP position included: Minimum 8 years of related experience including the resolution of complex employee relations issues; BA/BS required; PHR/SPR preferred; Working knowledge of multiple human resource disciplines including compensation practices, recruitment, development, engagement, benefits, organizational diagnosis, employee and union relations, diversity, performance management, federal and state respective employment laws; and multiple site experience.

19. TRIMEDX was aware of Roberts's qualifications which included: Bachelor's degree in Business Administration, Doctor of Jurisprudence, twelve plus years of corporate human resources experience, recruitment, management of immigration matters, management of Work Opportunity Tax Credit compliance, consulting with leaders to identify talent needs and strategies, advising hiring managers on market trends related to talent and compensation, compensation recommendations, review and adjudication of background checks, tracking and monitoring changing employment laws at the state and federal level and the impact they have on the organization, conducting cost benefit analysis and

making recommendations based on findings, implementing processes and procedures, training hiring managers on proper interview questions and hiring practices, training field HR managers to review and adjudicate background checks, supporting locations in 30+ states in the U.S. and ten Canadian provinces, and training hiring managers and HR managers on applicant tracking systems.

20. At the time, there were 3 HRBP's within TRIMEDX; all of them were female.

21. Roberts had recruited two of the HRBP's and was familiar with the role and their compensation.

22. Roberts's direct supervisor at the time, Anne Stout, stated it [HRBP position] would be a good promotional opportunity and would allow Roberts to gain additional experience with employee relations.

23. In or around August 2018, Roberts was offered the position of HRBP by Stout.

24. Roberts was offered a 4.8% increase in compensation with the new position.

25. Promotional increases were typically 10% and were approved or disapproved by Dawn Griffin, VP of Human Resources.

26. Stout told Roberts that because Ms. Griffin was the approving authority for compensation level, she would not be able to pay him as much as the female HR Business Partners.

27. Stout did not explain why Griffin would not allow her to pay Roberts as much as the female HR Business Partners.

28. At the time he was offered the HRBP position, Roberts had the most years of seniority with TRIMEDX, the most industry experience, and the highest level of education of the HR Business Partners.

29. HR managers, including Ms. Griffin, tasked Roberts with taking on additional responsibilities that other HR Business Partners were not tasked with.

30. Roberts was often sought out by the other HR Business Partners to assist them.

31. In or around November 2018, Jason Clevenger was hired as Director, Human Resources to supervise the HR Business Partners.

32. Clevenger had worked with Griffin at a previous company.

33. During his annual performance review in February 2019, Roberts expressed his concerns that he was being paid less than the female HRBP's to his new direct supervisor, Clevenger.

34. Clevenger acknowledged Roberts was being paid less than female colleagues and stated he would discuss it at a later date.

35. After receiving a "3" [out of a possible "5"] rating from Clevenger on his annual performance review, Roberts inquired what it would take to get a "4" or "5" rating.

36. Clevenger told Roberts he did not know what the criteria was for a "4" or "5" rating and would have to discuss it with the other HR leaders to figure it out.

37. Although Clevenger did not understand the rating scale, and criteria for a "4" or "5" rating, Clevenger gave Roberts a "3" rating and female Amber Ward a "4" rating.

38. On or about March 18, 2019, Roberts applied for the position of Manager, Human Resources.

39. The vacancy was announced as open to internal candidates only.

40. However, during the open application period, Jason Clevenger, Director, Human Resources, recruited and hired a female temporary outside contract employee, Kelli Gregor, to work in HR.

41. Just one day after being hired as an outside temporary employee, Clevenger allowed Gregor to apply for the open Manager, Human Resources position.

42. On or around April 12, 2019, Clevenger selected Gregor for the position of Manager, Human Resources.

43. Gregor was less qualified for the Manager, Human Resources position than Roberts.

44. When Clevenger informed Roberts of his decision to select Gregor for the position, he communicated that Roberts would need to assist Gregor in her new role because she would not be capable of performing all of the responsibilities when she assumed the position.

45. Clevenger also told Roberts he would need to perform some of the responsibilities of the Manager, Human Resources position.

46. During the conversation, Roberts again asked Clevenger why he was continuing to be paid less than the females while performing comparable, if not more, work.

47. Clevenger again told Roberts he would "look into it" and discuss it at a later date.

48. In or around April 2019, Amber Ward, a female, was converted from a contract HR Business Partner to a full-time HR Business Partner at a much higher salary than Roberts.

49. Ward was subsequently promoted almost immediately to Manager, Human Resources.

50. In or around October 2019, the two full-time female HR Business Partners left the organization leaving Roberts as the only full-time HR Business Partner on his team.

51. Around this same time, the requirements for the HR Business Partner were reduced to three years of experience.

52. In or around November 2019, Roberts was asked by the VP, Client Services to assist with a customer transition because Gregor was unable to grasp what was being requested.

53. In or around December 2019, Roberts again followed up with Clevenger on the issue of unequal compensation.

54. On or around January 10, 2020, Roberts met with Clevenger and Amber Ward, Manager, Human Resources.

55. At the conclusion of the meeting, Clevenger informed Roberts he or Ward would follow up in two weeks regarding the compensation issue.

56. Clevenger failed to follow-up as promised.

57. In the same meeting Clevenger implied that Roberts should seek employment elsewhere.

58. Clevenger said that development dollars were available to assist Roberts with networking and to find a new opportunity outside the company.

59. In or around June 2020, TRIMEDX downgraded the HR Business Partner position from a salary grade 11 to a salary grade 10, putting Roberts above the maximum for the salary band.

60. As of August 2020, there were seven full-time HRBP's at TRIMEDX; all but Roberts were female.

61. Roberts received several commendations from his peers, customers, and HR leadership for excellence and making a difference.

## IV. FIRST CLAIM FOR RELIEF

### (TITLE VII GENDER DISCRIMINATION)

62. Roberts incorporates by reference paragraphs 1 through 61 above.

63. Roberts is a white male.

64. In or around July 2018, Roberts applied for the position of Human Resource Business Partner with TRIMEDX.

65. At the time there were three other HR Business Partners at TRIMEDX; all of them were female.

66. In or around August 2018, Roberts was verbally offered the position of HR Business Partner by Anne Stout with a 4.8% increase in compensation.

67. Stout told Roberts she was unable to pay him as much as the female HR Business Partners.

68. Stout did not explain why Griffin would not allow her to pay Roberts as much as the female HR Business Partners.

69. Promotional increases were typically 10% and were approved or disapproved by Dawn Griffin, VP of Human Resources.

70. The offer letter presented to Roberts contained the same verbiage as promotional letters offered to other members of HR including Clevenger and Ward.

71. At the time he was offered the HRBP position, Roberts had the most years of seniority with TRIMEDX, the most industry experience, and the highest level of education of the HR Business Partners.

72. Roberts was tasked with taking on additional responsibilities that other HR Business Partners were not tasked with.

73. Roberts was tasked with supporting the company's Midwest Region, Mobile Medical Equipment program which operated across the country, developing a Talent Acquisition/HR Business Partner matrix to define the responsibilities of each role, immigration, supporting implementations outside his assigned area, and participating on the HR continuous improvement team.

74. In or around November 2018, Clevenger was hired as Director to oversee the HR Business Partners.

75. Clevenger worked for Griffin previously at another company.

76. During his annual performance review in February 2019, Roberts expressed his concerns that he was being paid less than the female HRBP's to his new direct supervisor, Clevenger.

77. Clevenger acknowledged Roberts was being paid less than female colleagues and stated they would discuss it at a later date.

78. After receiving a "3" rating from Clevenger on his annual performance review, Roberts inquired what it would take to get a "4" or "5" rating.

79. Clevenger told Roberts he did not know what the criteria was for a "4" or "5" rating and would have to discuss it with the other HR leaders to figure it out.

80. Despite not knowing the criteria for a "4" or "5" rating, Clevenger gave Roberts a "3" rating and female Amber Ward a "4" rating.

81. Only female associates in HR received higher than a "3" rating.

82. Female HR associates were given larger merit increase percentages than male HR associates, despite having the same annual performance review ratings.

83. In or around February 2019, Roberts was tasked with supporting the company's South Region while the assigned HR Business Partner was out of FMLA.

84. On or around March 18, 2019, Roberts applied for the position of Manager, Human Resources.

85. The vacancy was announced as open to internal candidates only.

86. However, during the open application period, Jason Clevenger, Director, Human Resources, recruited and hired a female temporary outside contract employee, Kelli Gregor, to work in HR.

87. Just one day after being hired as an outside temporary employee, Clevenger allowed Gregor to apply for the open Manager, Human Resources position.

88. On or around April 12, 2019, Clevenger selected Gregor for the position of Manager, Human Resources.

89. When Clevenger informed Roberts of his decision to select Gregor for the position, he communicated that Roberts would need to assist Gregor in her new role because she would not be capable of performing all of the responsibilities when she assumed the position.

90. Clevenger also informed Roberts he would need to perform some of the responsibilities of the Manager, Human Resources position.

91. Clevenger's two directives to Roberts were indicia Roberts was more qualified than Gregor for the Manager position.

92. In or around November 2019, Roberts was asked by the VP, Client Services to assist with a customer transition because Gregor was unable to grasp what was being requested.

93. Defendant later split the Manager position out into two separate roles, one supporting the business with HR-related needs and the other role focused on customer implementations, because Gregor was not capable of performing both functions.

94. During the conversation with Clevenger, Roberts again asked why he was continuing to be paid less than the females while being asked to take on additional work.

95. Clevenger again told Roberts he would "look into it" and discuss at a later date.

96. In or around December 2019, Roberts again followed up with Clevenger on the issue of unequal compensation.

97. On or around January 10, 2020, Roberts met with Clevenger and Amber Ward.

98. At the conclusion of the meeting, Clevenger informed Roberts he or Ward would follow up in two weeks regarding the compensation issue.

99. Clevenger failed to follow up as promised.

100. In the same meeting, Clevenger implied Roberts should seek employment elsewhere.

101. Clevenger said that development dollars were available to assist Roberts with networking and to find a new opportunity outside the company.

102. In or around October 2019, the two full-time female HR Business Partners left the organization leaving Roberts as the only full-time HR Business Partner on the team.

103. Around this same time, the requirements for the HR Business Partner were reduced to three years of experience.

104. Roberts was tasked with supporting the company's North Region in addition to the Midwest and Mobile Medical Equipment Program after the departure of the other HR Business Partners from the company.

105. Defendant notes Roberts received an individual contributor bonus in March 2020, only 1 of 3 HR associates to receive said bonus.

106. The decision to grant the bonus to Roberts was made after Roberts filed, and Defendant was made aware of, the EEOC charge.

107. The bonus was discretionary, and Defendant chose to not increase Roberts's base compensation in March 2020, despite multiple complaints about it.

108. Defendant has a history of disparate treatment of male associates in Human Resources.

109. Defendant has a history of giving higher percentage merit increases and promotional increases to females in Human Resources.

110. Since Griffin joined the company, that treatment has been compounded.

111. From 2014 to 2019, only one male associate in HR received higher than a 3.5% merit increase while a large number of female associates received greater than that percentage.

112. From October 2019 to August 2020, Defendant hired five HR Business Partners.

113. All five HR Business Partners were female.

114. Clevenger has not hired a male associate into HR since he joined the company in November 2018.

115. TRIMEDX claims they do not have discriminatory practices and reference Clevenger's promotion from Director to Vice President of Human Resources.

116. Clevenger worked for Griffin previously and his promotion was reward for facilitating the discriminatory behavior.

## V. SECOND CLAIM FOR RELIEF

### (VIOLATION OF THE EQUAL PAY ACT)

### (TRIMEDX and DAWN GRIFFIN)

117. Roberts incorporates by reference paragraphs 1 through 116 above.

118. TRIMEDX and Griffin are "employers" as defined by the Equal Pay Act which incorporates the Fair Labor Standards Act definition of "employer".

119. In or around July 2018, Roberts applied for the position of Human Resource Business Partner with TRIMEDX.

120. At the time there were three other HR Business Partners at TRIMEDX; all of them were female.

121. In or around August 2018, Roberts was verbally offered the position of HR Business Partner by Anne Stout with a 4.8% increase in compensation.

122. Stout told Roberts she was unable to pay him as much as the female HR Business Partners.

123. Stout did not tell Roberts why she was unable to pay him as much as the female HR Business Partners.

124. Promotional increases were typically 10% and were approved or disapproved by Dawn Griffin, VP of Human Resources.

125. At the time he was offered the HRBP position, Roberts had the most years of seniority with TRIMEDX, the most industry experience, and the highest level of education of the HR Business Partners.

126. Roberts was tasked with taking on additional responsibilities that other HR Business Partners were not tasked with.

127. Roberts was tasked with supporting the company's Midwest Region, Mobile Medical Equipment program which operated across the country, developing a Talent Acquisition/HR Business Partner matrix to define the responsibilities of each role, immigration, supporting implementations outside his assigned area, and participating on the HR continuous improvement team.

128. During his annual performance review in February 2019, Roberts complained that he was being paid less than the female HRBP's to his new direct supervisor, Clevenger.

129. Clevenger acknowledged Roberts was being paid less than female colleagues and stated he would discuss it at a later date.

130. In or around February 2019, Roberts was tasked with supporting the company's South Region while the assigned female HR Business Partner was out of FMLA.

131. In or around October 2019, Roberts was tasked with supporting the company's North Region in addition to the Midwest and Mobile Medical Equipment Program after the departure of the other female HR Business Partners from the company.

132. When Clevenger told Roberts he was hiring Gregor for the Manager, Human Resources, Roberts again complained about the unequal compensation and the additional responsibilities being assigned to him.

133. Clevenger again told Roberts he would "look into it" and discuss at a later date.

134. In or around December 2019, Roberts again followed up with Clevenger on the issue of unequal compensation.

135. On or around January 10, 2020, Roberts met with Clevenger and Amber Ward.

136. At the conclusion of the meeting, Clevenger informed Roberts he or Ward would follow up in two weeks regarding the compensation issue.

137. Clevenger failed to follow up as promised.

138. Defendant claims Roberts was not as qualified as the other two female HR Business Partners because he did not have a PHR or SPHR certification.

139. The two original female HR Business Partners did not have a PHR or SPHR certification.

140. Of the five female HR Business Partners hired since October 2019, none have a PHR or SPHR certification.

141. Amber Ward, who was hired as an HR Business Partner and then subsequently promoted to Manager and later Director, did not have a PHR or SPHR certification.

142. PHR/SPHR certification was preferred, not required for the position.

143. Defendant claims Roberts was not as qualified for the HR Business Partner position because his degree was not in Human Resources.

144. Other female HR Business Partners hired by Defendant had degrees in Management, Business Administration, Communications, Business Management, Industrial Engineering, Applied Health Science, and Industrial Technology Education.

145. Defendant contends Roberts had only done recruiting and did not have experience in a consultative role.

146. Defendant's contentions are false.

147. While Roberts has held the title of Recruiter, Defendant was aware he also had experience managing immigration matters, managing Work Opportunity Tax Credit compliance, working with leaders to identify talent needs and strategies, advising hiring managers on market trends related to talent and compensation, reviewing and adjudicating background checks, tracking and monitoring changing employment laws at the state and federal level and the impact they have on the organization, conducting cost benefit analysis and making recommendations based on findings, implementing to processes and procedures, training hiring managers on proper interview questions and hiring practices, training field HR managers to review and adjudicate background checks, and training hiring managers and HR managers on applicant tracking systems.

148. Roberts performed the same work, had the same or higher-level job responsibilities than female HR Business Partners.

149. Roberts performed the same or more work than similarly situated female HR Business Partners.

150. Roberts had more seniority with TRIMEDX, greater work experience within TRIMEDX, and greater education credentials than his female HR Business Partner co-workers.

151. Defendants TRIMEDX and Griffin were aware that Roberts was performing the same or greater work and had the same or greater job responsibilities than the female HR Business Partners and intentionally denied him the same or greater pay than the female HR Business Partners.

152. TRIMEDX and Griffin violated Roberts rights of equal pay under the Equal Pay Act.

## RELIEF

WHEREFORE, Roberts requests judgment in his favor against Defendants and that the following be awarded:

a. Award Roberts damages permitted under Title VII related to Defendants gender discrimination, including back pay, front pay, compensatory and punitive damages

b. Award Roberts damages permitted under the Equal Pay Act, including back pay, front pay, and liquidated damages.

c. Award Roberts the costs of this action including reasonable attorney's fees with interest, and any other such relief as the Court may deem just, proper, and equitable.

d. Grant such relief, including injunctive relief, as the Court deems necessary and proper in the public interest.

## DEMAND FOR JURY TRIAL

WHEREFORE, Plaintiff Thomas Roberts demands trial by jury on all issues and questions so triable, together with other such relief as is just and proper in the premises.

Respectfully submitted,

/s/ Thomas B. Roberts
Thomas B. Roberts
9403 W. Stargazer Dr.
Pendleton, IN  46064
Ph: (317) 771-9121
Email: tomroberts4@hotmail.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing has been served on October 30, 2020 in the following manner upon the following individual(s):

☐ Court's electronic filing system
☒ Certified Mail, Return Receipt Requested
☐ First Class U.S. Mail, postage prepaid
☐ Service on Individual
☐ Private Service
☒ Email

Henry Hummel
CEO, TRIMEDX
5451 Lakeview Pkwy S. Drive
Indianapolis, IN  46268
Henry.Hummel@trimedx.com

Art Fisher
General Counsel, TRIMEDX
5451 Lakeview Pkwy S. Drive
Indianapolis, IN  46268
Art.Fisher@trimedx.com

# SUMMONS
## IN THE MARION CIRCUIT AND SUPERIOR COURTS

| | | |
|---|---|---|
| STATE OF INDIANA | ) | MARION COUNTY SUPERIOR COURT |
| | ) SS: | |
| COUNTY OF MARION | ) | CAUSE NO. |

| | |
|---|---|
| THOMAS ROBERTS, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| TRIMEDX HOLDINGS LLC, and | ) |
| DAWN GRIFFIN | ) |
| | ) |
| Defendants. | ) |

TO DEFENDANT:    TRIMEDX Holdings, LLC
5451 Lakeview Pkwy S. Drive
Indianapolis, IN  46268

You are hereby notified that you have been sued by the Plaintiff, Thomas Roberts in the Court indicated above.

If this Summons is accompanied by an Order to Appear, you must appear in Court on the date and time stated in the Order to Appear. If you do not appear, evidence may be heard in your absence and a determination made by the Court.

If you wish to retain an attorney to represent you in this matter, it is advisable to do so before the date stated in the Order to Appear.

If you take no action in this case after receipt of this Summons, the Court can make a determination regarding damages and fees.

Dated: 10/30/2020

_____
Clerk, Marion County

**The Following manner of service of summons is hereby designated:**

☒ Registered or Certified Mail
☐ Service at place of employment, to wit: _____
☐ Service on individual - (Personal or copy) at above address
☐ Service on an agent: _____

Thomas Roberts
9403 W. Stargazer Dr.
Pendleton, IN 46064
(317) 771-9121